May it please the Court, my name... Let's wait just a minute and let everyone get settled. Okay, Mr. Jones, I pronounced your client's name Schlieve, but it might be Schlieve. Can you tell us which is right? It's Dr. Schlieve. Schlieve? Schlieve. Schlieve, all right. I didn't even guess on that one. You got the Jones part right, so that's good. May it please the Court, my name is William Jones and I represent appellant Dr. Paul Schlieve in this matter. This 2255 motion is so old that I actually have an opportunity to have brought my client with me and he's also in the gallery. The order granting a certificate of appealability in this matter really demonstrates the core problem in this matter, and that is that the district court failed to follow the instruction given by this court on remand. More specifically, the court instructed the district court to address the nullification issue, asking them to determine whether or not the videotape had been improperly disclosed prior to the suppression hearing. I thought it was made available before the suppression hearing. Is that not right? Well, it was made available, but that offer was nullified by statements made by a case agent who said, but there's nothing on it. And so we're relying upon case law that indicates that that knowledge can be nullified and knowledge of a tape can't be used to indicate proper disclosure. Well, the jury had it. Right, and we're relying on Smith v. Black. What difference does it make if maybe enough was not said originally given to the counsel for the defense, but it's in the evidence, how could we say that this suppression is affected by something that the defendant didn't have? Well, we're relying on a case law that says in Smith v. Black the analysis is really, the Brady analysis is based upon prior to the suppression hearing. Did he have that, a due process? Did he have the opportunity to use that tape in his presentation on the suppression issue, his Fourth Amendment argument? Every time it gets sent back down to the district court, they make a similar statement as you. Well, it didn't affect the trial because, you know, it was there at time of the trial. They had the tape of the trial. I just don't know what the prosecutor could do to satisfy it. Well, the prosecutor could instruct his agent not to misrepresent what's on the tape when it gets disclosed. That's the problem because his attorney, Attorney Cobb, relied on that in not viewing a four-hour videotape. It says it's not on there. And so that is our position, that it was improperly disclosed. You're arguing that the defendant didn't have a good look at the video because he was sitting where he couldn't see everything. And I just wonder how that got to be important. Well, his attorney didn't take a good look at the video, too, prior to the suppression motion in hearing. And we know that based upon, well, there was actually an exchange at trial. Do you remember we talked about this videotape? And that's in the government's opposition brief in this case, the actual. But it's also part of the record as the transcript of the trial. You remember we took, you know, it was Agent Ruth. Do you remember we sat down and you gave me all the evidence as the controlling case agent on behalf of the U.S. Attorney's Office? Yes. I remember. And he claimed, well, we started to watch it, and then I said I'd just send you a copy of it. At that time, the attorney says, no, you didn't. We never watched that tape. And so there is obviously evidence of that meeting and a discussion about the tape. Strawley suggests that there was some indication that dissuaded him from bothering to watch it. But even more compelling is if you look at the actual suppression hearing transcript, this attorney, who is attempting to suppress the evidence seized at the stop, painstakingly goes through the witnesses who are all adverse, obviously, police officers, to try and establish as long a possible stop as he can. If he had had knowledge of the tape and seen the tape, he could have doubled how long that length was. There is no rational argument that he made some strategic decision not to view it. It was nullified, and his knowledge of that tape was nullified, because there's no other explanation why he would not have played that tape at the suppression hearing to demonstrate just how long it took. Also, then you move on to the second area of whether or not, you know, this court had asked the district court to determine, is that tape material, as it relates to the suppression issue? Was there material evidence on there? Again, there is, if you look at the log that Dr. Schlieve lays out after finally getting a chance to see the tape in anticipation of the 2255, his first chance to really appear in this whole process. And he states that there's evidence in there of the drug dog being directed into the truck, not just using his plain smell to be drawn in. There's evidence of law enforcement lowering a tailgate, making it easier for a dog and more instinctive to jump into that truck, all in violation of his right to be free from improper search and seizure. So there is materiality in that tape that was also not addressed at the suppression hearing by no rational explanation other than something had dissuaded that attorney from reviewing it. And it comes from that meeting with the case agent who indicates that there's nothing on it. So that is, I think, the crux of the violation. And then there is another issue, and that is we're talking about Brady material. And there's case law mentioned in the briefing that is a cumulative approach. So this Brady material is a videotape, but there are other things that later on were disclosed about. How long was it between the suppression hearing and trial? I believe it was two months. I have an actual timeline, but I think that's generally speaking. It wasn't a year or something. But his trial counsel had the videotape by the time of trial. It was provided to him two weeks before trial, yes. And he did not renew the motion to suppress and say, Your Honor, I've now reviewed the videotape. I have it. I didn't know about it. I want to redo on the suppression hearing. That's correct. But the assertion is he was still relying on assertion that there's nothing on it. Well, at some point, when it's in evidence, I mean, parts of it were played. It's hard to say, I didn't see it. I didn't watch it. I don't know why. I just didn't watch it. I can't say. He certainly didn't watch it. He even says so at trial. No, I did not watch that tape. The implication is that he did not watch it because he had some reason not to watch it. Because we can rely on the presumption that, and this happens in Strickland all the time, where we can rely on the presumption that he's a competent attorney, and competent attorneys don't watch video unless there's been some nullification of his knowledge of that tape. My point is he had the opportunity to renew and say, I did not have this at the suppression hearing, and make the Brady claim or whatever, but say, I now have new evidence that I would like to revisit the suppression hearing. That wasn't done. That was not done. But, again, he has been told there's nothing on that tape. But at the time of trial, before the conviction, he did have the tape. He did have the tape that was provided to him. And parts of it were introduced into evidence, as I understand it. Yes, that's true. But he did not renew a motion. That doesn't take away the fact that it's not as if the government said, we were wrong, here's the tape, you might want to watch it. And, you know, I guess it does have more than just a couple minutes of the beginning. So we're on habeas. What standard do we apply? Well, typically you're going to review the factual findings for, you know, some sort of use of discretion and to no application, I think, on the law. But you've asked twice now for the district court to, or at least once specifically, to chime in on the facts. And they just haven't done it. Please come back and tell us, was this improperly disclosed? They just didn't address it. Please tell us, is there material evidence in this tape? You know, from the impression of the order relating to the certificate of appealability that was granted here, I think the favorability and whether Mr. Schliebe had an opportunity to view it might be of a lesser value or importance, it's really those two. And it came back and there's just no. So I don't know how you could review their facts for abuse of discretion or some sort of significant lack of support when they did not do what was asked. I feel that there's sufficient evidence in the record to conclude that it was improperly disclosed. And I mentioned, you know, there was that exchange at trial, the non-use of the tape during the suppression hearing, and the presumption that this is competent counsel, as you do in typically Strickland, in a Strickland analysis. And I think that there is ample evidence, even though they didn't chime in, they were given their opportunity, they didn't, to conclude that there is material evidence in this video. Because Dr. Schliebe, in his 2255, is very specific about what is in that tape, and there's been no objection or challenge to any of the specific examples that he gives that I think are pretty, that are very compelling, describing a dog being directed into a vehicle to start sniffing around, not doing that on plain smell, lowering the tailgate. Other things that maybe are less obvious, but I think also, for instance, the tape showing it being much longer than what was concluded by the judge at the suppression hearing just based on testimony. And I think it was about 10 minutes. Well, no, it was more like 25. You know, things like that, that could have been shown with specificity in the videotape had it been not kind of cast away by this attorney based on relying on honesty by this DEA agent. I should also mention, I think it was potentially a waiver issue of an argument that came up in the opposition brief in this case, and that is for the first time the government has raised the issue that, well, hey, there's no affidavit from Dr. Schliebe's attorney that he had this meeting and he was told there was nothing on the tape. Well, that assertion has been in the record under this 22255 for many years, since the beginning, and it's never been refuted. It wasn't even refuted down in the district court. I think it was October 2013 when Brees were invited. Nowhere in there does it say, oh, and by the way, we challenged that assertion that there was this meeting and nullification. It's only now. Had that been raised earlier, there would have been an opportunity perhaps to get an affidavit put in the record. And I point out that the original 2255 was very lengthy. I think there were 16 issues. Many affidavits were used in reply to allegations of, well, you know, the record isn't sufficient. But there was really nothing. This was never raised, and you can't really say, well, Dr. Schliebe, who, you know, is in prison, filing a 2255, didn't just on his own try and go get an affidavit in support when it really was never a particularly raised or challenged issue down below. So the government in their opposition raised three issues. I think that the certificate of appealability really has already ruled on that. I mean, I suppose it's not a final ruling, but the issue of the questions of did the court err in failing to find whether or not there was improper disclosure, well, the answer is yes, they didn't do that. That was asked of them, and it was not done. Did they fail to follow instructions to address specific examples raised by Dr. Schliebe in his 2255? Yes, they did not address that. They just, I think they gave it short attention and denied appealability. And fortunately, this court granted appealability. And then the third issue, did the district court fail to follow the instructions to consider materiality and favorability? Yes, the certificate of appealability, the order granting appealability says that they did. And I think in the end, the district court has had its opportunity to chime in, as I say. I think that they, I can't explain why there is very little response to those specific requests. But I think that the record is sufficient if the court is considering, well, maybe we'll send it back for them to do it again. I would encourage to just consider if the record itself is sufficient to make a decision based on the 2255. And I think it is evident that there was improper disclosure of the videotape and evident that that tape is material at the stage of the suppression under Smith v. Black. The suppression analysis is what is important, even though every time it's been addressed below, they've always said, well, like Judge Rieveley indicates, well, they had it at trial, I know. But Fourth Amendment applies when at the suppression, the motion to suppress evidence stage as well. And that's where the focus should be. And that is where there was improper disclosure of a tape that was material and useful in that motion. All right. Thank you, Mr. Jones. You've saved time for rebuttal. Thank you. Mr. Jackson. May it please the Court? This Court, after the first dismissal, remanded this case specifically really for one thing contained in the remand, and that was it was remanded for further consideration of Mr. Schlieve's claim that the videotape from Officer Edlin's vehicle was not properly disclosed prior to the suppression hearing in violation of Brady. Now, the remand discussed prior to the specific instructions with respect to remand the possibility that there might be other issues that the district court might determine ought to be addressed. But the actual remand in the Court's language was solely for the purpose of determining whether the videotape was improperly disclosed in relation to Brady. What does the record tell us, if anything, about specifically what the prosecution said in regard to whether there was nothing on the tape or whatever? Your Honor, there is nothing in the record that suggests the prosecution ever did that other than Mr. Schlieve's claim in his 2255 that was filed, frankly, several years after the first disclosure of the tape. In fact, there are things that suggest just the opposite. What position does, irrespective of what may be in the record, and you answered the question exactly as I'd put it, but whether or not it's in the record, what is the government's position today on what was said about the tape at the time it was made available? Your Honor, it's the government's position that Mr. Cobb, the defense counsel, was advised of the existence of the videotape, was offered a copy that, according to Agent Ruth, in testimony under oath, they watched the tape together and that a promise was made to get a copy of the tape to Mr. Cobb. That's our position. The government vehemently denies that Agent Ruth would, with or without the government's knowledge, misrepresent the contents of the tape, and all of the evidence suggests that he didn't. There's not a shred of evidence that supports Mr. Schlieve's late-in-the-day claim that Agent Ruth would have done that. This Court has noted some of those. As I said, first of all, it is in contravention of the sworn testimony of Agent Ruth, and it's important to note in that testimony, it wasn't just Agent Ruth said, we had the tape, we watched it together. Mr. Cobb says, well, no, we didn't watch it. And Agent Ruth says, yeah, I put it in the videotape player and we watched it. And Mr. Cobb said, well, no, we didn't watch it. I told you I'd seen enough. And that's it. And at that point, at the point of that conversation, that was testimony at trial. At the point of that, Mr. Cobb had a copy of the tape. He knew how long it was. He knew what it contained. And he didn't say at that point, oh, but wait a minute, not only did I not watch it, but I didn't watch it because you misrepresented how long it was and what it contained. He simply disagreed about whether or not he had, in fact, watched it. We also know from the record that at the suppression hearing, where Mr. Cobb had an opportunity to cross-examine Officer Edlin, whose patrol vehicle produced the tape, he didn't say a word to him about it. He didn't even ask about the tape. But he certainly didn't ask, hey, what's the deal with you producing a tape that stopped after 20 minutes? Why did that happen? And don't you agree that having taped the whole thing would have been beneficial? None of that came up. None of that came up at trial, where there's no question that two or three weeks before trial, the defense had the tape in its possession. Portions of the tape were played at trial, and the entire video was provided to the jury. And there's not a word in the testimony suggesting that Mr. Cobb was ever misrepresented that the facts or the contents of the tape were ever misrepresented to him. As I believe Judge Owen indicated, there was never an attempt at a redo on the motion to suppress. It wasn't brought up during trial. It wasn't brought up in the motion for new trial. I'm sorry. He continued to argue that the suppression should have been granted, but not with respect to any deficiency in what he was told about the tape. It wasn't brought up during trial. It wasn't brought up in his motion for new trial. One of the appellate points had to do with the suppression should have been granted. And yet even there, there is nothing suggesting that Mr. Cobb was ever misled with respect to the contents of that videotape. Mr. Jones brought up, well, gee, the government has waived any argument that that conversation didn't occur. I respectfully disagree with that representation. Number one, it wasn't the government's job to disprove an unsubstantiated and I would suggest specious claim that Mr. Sleevy came up with several years after trial until there was some evidence that in fact that claim had validity. The government didn't have any obligation with respect to trying to disprove it. But I would also suggest that if the court looks at the record from day one, once that claim came up, the government has taken the position that the videotape was properly disclosed and that there was no misconduct on the part of the government or Agent Ruth. Now, perhaps we could have said it more specifically to have better satisfied Mr. Jones and his client, but it's clear that our position is that didn't happen and the government does not and will never concede that that sort of thing happened. Mr. Jones brought up the question of materiality. Obviously, a videotape that shows a traffic stop and the discovery of drugs is material. That's a separate question from whether the videotape would have been favorable to Mr. Sleevy in his motion to suppress and the government suggests there is nothing with respect to what happened in the videotape that would have better enabled Mr. Sleevy to have presented his motion to suppress. So while it may have been material in the sense that it showed what happened, it didn't show anything that would have benefited Mr. Sleevy with respect to his motion to suppress or obviously with respect to the trial either. That frankly sums up the government's argument, Your Honors, and unless you have questions, I'll cede the rest of my time. Thank you, Mr. Jackson. Mr. Jones, you've saved time for rebuttal. Thank you, Your Honor. I'll use my rebuttal time to respond to the assertion that there's nothing on the record of improper disclosure, and I respectfully disagree. There is evidence that's really not disputed that there was a meeting between Agent Ruth and Dr. Sleevy's attorney. There is also evidence that the videotape was cut short as far as it was not viewed and it was not handed over at that time prior to the suppression hearing. There's also evidence that a copy was promised and not provided until after the suppression hearing. There is the actual suppression hearing itself, as I mentioned, that had that videotape been known to demonstrate a great portion of the actual stop, it would have been used, and you can infer or really assess what rational attorney would not use that had it not been nullified, his knowledge of it been nullified by statements made by Agent Ruth. Other evidence to suggest this nullification is there were two videotapes. One of them was destroyed. Now, that was taken up in other issues. This videotape, for reasons unexplained, has no audio when it finally gets to Dr. Sleevy's attorney. This is all ñ Did Officer Ruth testify at trial that defense counsel was told about the tape, they watched it together, and Officer Ruth offered to provide another copy, and it was defense counsel who said, I've seen enough? Was that testimony? Yes, that is what Agent Ruth said. Defense counsel didn't object to say that's not what happened? That is what he said. He said, no, that is not what happened. We'll agree to disagree at this point because we're in the middle of a trial and I'm cross-examining other things. It came almost spontaneously. He said, do you remember we sat down to talk about evidence about the tape? And he said, yeah, we sat down and we watched it. He was very quick to say that. No, we didn't. We didn't watch that tape. He said, sure we did, and you watched a little of it, and you said I've seen enough, and I promised to send you a copy. It's a very short record. I mean, it's something that usually we don't have to work with. At least they talked about it on the record. But there is a discussion. It's in the briefs. I do note that he promised to get him a copy, and he just never did until after the suppression hearing. As evidence, there's just really no rational explanation why a competent attorney would not use that tape in the suppression hearing unless the suggestion that it was nullified. He was dissuaded from watching it just because it's a long tape. It's not 2017 where you have digital video. It's a lot easier to scan through. This is a four-hour videotape, and if you remember back then, and that does take a long time. That is valuable time to take to fast-forward through video. If a police officer indicates that it's mostly stops that came before, and then it ends, and there's no whatever, some indicator, I think that there's ample evidence to conclude. I think that they do have an obligation to respond to the assertion of fact in some way to avoid the impression that they are not contesting it. That assertion was made rather early on. No response was ever provided to that claim. I think that is compelling. I think that Dr. Schlieve was denied his right to due process at the suppression stage. This is not an analysis of, well, the tape was present at the trial, so what's the big deal? It didn't affect the outcome of the trial. It did because he was denied material evidence that would have been used to suppress the evidence that was the primary evidence at trial. And given that conclusion, I feel that the court, and would ask the court to vacate his sentence and remand, presumably if it's pursued we'd have a suppression hearing the way it should have been, which would have been with the use of the stop and a determination of whether his right to be free from unreasonable search and seizure had actually been infringed. All right. Thank you, Mr. Jones. Your case is under submission.